## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5500 | **DATE** | 1/16/2002 |
| **CASE TITLE** | U.S.A. ex rel Yarbrough vs. Richard B. Gramley | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, we deny the Section 2254 petition for writ of habeas corpus brought by petitioner DeMarco Yarbrough. This is a final and appealable order and all other pending motions are deemed moot by this Order. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | **3** | **Document Number** |
| | Notices mailed by judge's staff. | | number of notices | |
| | Notified counsel by telephone. | | JAN 2 5 2002 | |
| ✓ | Docketing to mail notices. | | date docketed | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | **29** |
| | Copy to judge/magistrate judge. | | JAN 2 5 2002 | |
| TSA | courtroom deputy's initials | U.S. DISTRICT COURT CLERK | date mailed notice | |
| | | 02 JAN 24 PM 4:45 | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

UNITED STATES OF AMERICA, ex rel   )
DeMARCO YARBROUGH,              )
                                  )
                Petitioner,   )
                                  )     No. 98 C 5500
    v.                           )
                                  )     Judge Wayne R. Andersen
RICHARD B. GRAMLEY,        )
                                  )
                Respondent.   )

DOCKETED

JAN 2 5 2002

## MEMORANDUM, OPINION AND ORDER

    This case is before the Court on the petition of DeMarco Yarbrough for writ of habeas corpus pursuant to U.S.C. § 2254. For the following reasons, we deny the petition for habeas corpus.

### BACKGROUND

    Petitioner does not challenge the statement of facts set forth in the order of the Illinois Appellate Court affirming his first degree murder and home invasion convictions. See People v. Yarbrough, 645 N.E.2d 423 (Ill.App.Ct. Dec. 20, 1994). For purposes of federal habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e). Accordingly, we will adopt the facts as our own.

    In August 1989, petitioner resided in a Richton Park apartment with Debra Turner, Richard Clerk, and Irma Jean McCastle. Petitioner and Turner had been living together for six months. On Friday, August 18, 1989, petitioner, his roommates, and several of Turner's relatives were present at a dinner party at the Richton Park apartment. At some point during the night, Turner's relatives

and Richard Clerk left the apartment and James Clerk, Richard's nephew, joined the party. The guests consumed alcohol, heroin, cocaine, and marijuana.

When the party ended early Saturday morning, petitioner and Turner went to sleep in the bedroom they shared. McCastle went to sleep in her room and James Clerk went to sleep on the couch in the living room. Petitioner awoke Saturday afternoon and left the apartment to pick up his paycheck. He was away from the apartment for approximately forty-five minutes to one hour. Turner testified that as she was sleeping on the bed, while lying on her stomach and dressed in a nightshirt with no underwear, she was partially awakened by someone touching her in a sexual manner. Half asleep, hung over from the night before and still in a drugged state, she thought petitioner was fondling her. She testified that when her legs were pulled apart, she awoke and found that the man was James Clerk, not petitioner. Turner screamed at Clerk, asking him what he was doing. Clerk responded that petitioner was not present and since he and Turner had known each other for a long time, he thought they could have intercourse. Turner shouted that he had better leave, and Clerk left the bedroom.

When petitioner returned to the apartment, he drove James Clerk to a liquor store in Ford Heights and continued on to visit some relatives in Chicago. James Clerk's girlfriend, Sheila Harris, testified that Clerk seemed upset and jumpy that evening, continually looking out the windows.

Petitioner testified that he left Chicago around midnight on that Saturday night, returned to the Richton Park apartment and went to sleep, without speaking to Turner. On Sunday afternoon, petitioner noticed Turner's distressed state and asked what was upsetting her. Petitioner testified that Turner, while crying hysterically, told him that Clerk had raped her. Turner testified that she was

unsure whether she used the word "rape" or "attack" or "molest," but stated that it was a word in that category.

Petitioner testified that he felt his stomach drop and started crying. He immediately drove to the 100 block of West Hickory Street in Chicago Heights, where both his brother, Dwayne Yarbrough, and James Clerk resided in separate apartments. Petitioner recklessly pulled his car into Dwayne Yarbrough's driveway at 130 Hickory Street. Petitioner exited from the car and yelled "that nigger raped Debra."

Petitioner testified that he wanted to find out if it was true that Clerk had raped his girlfriend. Following petitioner's request, Dwayne took him to Clerk's apartment, down the block at 120 West Hickory Street. Petitioner knocked on Clerk's second floor apartment door, and Clerk eventually answered the door. He allowed petitioner into the apartment. Sheila Harris was also in the apartment at the time. Petitioner did not want to speak in front of her, so he said,"I need to speak to you about something that's important." Clerk appeared shocked and agreed to meet petitioner downstairs outside of the apartment.

Petitioner testified that he exited the apartment, waited for Clerk for a minute or two, and then went back to Dwayne's apartment. While in Dwayne's apartment, petitioner retrieved a large automatic rifle, measuring approximately three to four feet in length. Petitioner testified that he did not trust Clerk and viewed him as a threat, so he grabbed the rifle for protection. Petitioner testified that he was emotional, confused, and hurt. He tried to place the rifle in his pants, but it did not fit.

Petitioner testified that he exited Dwayne's apartment and headed back to Clerk's residence. Clerk was not in front of the apartment when petitioner arrived. Petitioner knocked on Clerk's door and when Clerk answered, he smiled at petitioner. Petitioner testified that, at that moment, he

3

thought Clerk had raped Debra Turner. Clerk attempted to run, and petitioner fired the gun several times in Clerk's direction. Petitioner claims that he pulled the automatic trigger only one time.

Sheila Harris testified that she opened the bedroom door when she heard a pop sound and observed Clerk lying on the ground, with both his hands up "yelling for his life." James Rossi, an evidence technician for the Cook County Sheriff's office, testified that a bullet recovered from the floor at the scene indicated that petitioner fired that particular shot while standing over the deceased. Clerk had been shot five times.

Petitioner then ran back down the street and through the gangway alongside Dwayne's apartment building, dropped the weapon and continued into the forest preserve. Approximately one week later, petitioner and Debra Turner fled to Minneapolis, where petitioner was arrested over one year later, on September 19, 1990. The following day, petitioner gave a signed statement to police accounting the events surrounding James Clerk's death.

At trial, contending that he killed James Clerk under a state of sudden and intense passion after he learned that Clerk had sexually assaulted his girlfriend, petitioner sought a jury instruction for second degree murder based upon sudden and intense passion. The trial court denied petitioner's request. Petitioner was convicted of first degree murder and home invasion, and he was sentenced to concurrent imprisonment terms of 40 years for murder and 30 years for home invasion.

Petitioner appealed his convictions to the Illinois Appellate Court, First Judicial District contending that: 1) the trial court erred in refusing his tendered second degree murder instruction based on sudden and intense passion; 2) he was entitled to have his conviction for home invasion reversed because it was based on the same physical act as the murder; and 3) since he received multiple convictions for the same physical act, he was entitled to re-sentencing. On December 20,

1994, the Illinois Appellate Court affirmed the convictions. <u>People v. Yarbrough</u>, 645 N.E.2d 423 (Ill.App.Ct. 1994).

Petitioner filed a petition for leave to appeal to the Illinois Supreme Court contending that: 1) his sentence violated the cruel and unusual punishment provision of the 8th Amendment and violated his right to due process of the law; 2) he was not proven guilty of home invasion beyond a reasonable doubt because he did not enter with the intent to commit a felony; and 3) the court erred in not allowing an instruction on the lesser offense of second degree murder based on sudden and intense passion. On October 4, 1995, the Illinois Supreme Court denied the petition for leave to appeal. <u>People v. Yarbrough</u>, No. 79191.

Petitioner filed a post-conviction petition, which was dismissed by the trial judge. Petitioner appealed to the Illinois Appellate Court , and appointed counsel filed a motion to withdraw based on <u>Pennsylvania v. Finley</u>, because counsel believed there to be no arguable bases for collateral relief. Petitioner filed a motion to deny counsel's motion to withdraw alleging that: 1) denial of equal protection and due process rights because his brother was coerced into signing a written statement in this case; 2) a <u>Brady</u> violation because it was not disclosed that another man was interrogated in this case who fit a witness' identification of the assailant; 3) prosecutorial misconduct because the prosecutors failed to disclose that it was petitioner's brother who was identified at the scene and because the state's attorney talked to the defense witness before trial; 4) ineffective assistance of counsel because his lawyers did not object when prosecutors talked with the petitioner's key witness in this case and did not disclose the substance of that conversation to petitioner; 5) ineffective assistance of counsel when he was not given the opportunity to examine and impeach witnesses regarding undisclosed evidence and because counsel misapprehended the law regarding

second degree murder. On October 21, 1997, the Illinois Appellate Court determined there to be no issues of arguable merit. The Appellate Court thus granted the motion of the public defender to withdraw as counsel and affirmed the judgment of the Circuit Court. People v. Yarbrough, 1-97-0294.

On November 26, 1997, petitioner filed a petition for leave to appeal the denial of his post-conviction petition to the Illinois Supreme Court, raising the same issues he raised in the Appellate Court. On February 4, 1998, the Illinois Supreme Court denied the petition for leave to appeal.

On September 1, 1998, petitioner filed the instant petition for writ of habeas corpus in this Court alleging: 1) he was denied due process and equal protection of the law because his brother, not a defendant in this case, was coerced to sign a statement linking petitioner to the crime, and petitioner was denied the opportunity to discover any information regarding any deals or promises made to his brother; 2) prosecutorial misconduct because prosecutors talked to Ms. Turner, the petitioner's key witness, the night before trial and prevented him from discovering that Ms. Turner was a hostile witness; 3) a Brady violation by the failure of the prosecutor to disclose that another one of petitioner's brothers was identified as the assailant in this case by a key witness; 4) ineffective assistance of counsel due to the fact that counsel was not given the opportunity to impeach all witnesses; and 5) petitioner was subject to malicious and retaliatory prosecution.

On June 27, 2000, we denied petitioner's request for appointment of counsel. We gave petitioner until October 5, 2000 to file a reply brief. That date was later extended at petitioner's request to December 22, 2000. To date, over one year later, the Court has received no reply filed by petitioner.

6

## DISCUSSION

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Moffat v. Gilmore, 113 F.3d 698, 702 (7th Cir. 1997); see also Del Vecchio v. Illinois Dept. of Corrections, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law."). The federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default. See Chambers v. McCaughtry, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); see also Bocian v. Godinez, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" McGowan v. Miller, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)).

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." Wallace v. Duckworth, 778 F.2d

1215, 1219 (7th Cir. 1985). In this case, exhaustion is not an issue. Respondent concedes that petitioner has exhausted his state court remedies for purposes of federal habeas review because he has no further avenues in state court through which to challenge his conviction. We now turn to the issue of procedural default.

I. <u>Procedural Default</u>

Claims that were never presented to the state courts cannot be raised for the first time in a federal habeas corpus petition. <u>Rodriguez v. Peters</u>, 63 F.3d 546, 555 (7th Cir. 1995); <u>Burgin v. Broglin</u>, 900 F.2d 990, 996-97 (7th Cir. 1990). If the state court is not presented with an issue, that court did not have the opportunity to consider the matter. Thus, the claim is not fairly presented to the state courts, and it is inappropriate for habeas review. <u>Steward v. Gilmore</u>, 80 F.3d 1205, 1212 (7th Cir. 1996). The failure to include an issue in a petition for leave to appeal to the Illinois Supreme Court precludes consideration of the claim in federal court on habeas review. <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838 (1999); <u>Rodriguez v. Scillia</u>, 193 F.3d 913, 917 (7th Cir. 1999).

A petitioner has not fairly presented an issue to a state court if his argument did not "(1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation." <u>Verdin v. O'Leary</u>, 972 F.2d 1467, 1473-74 (7th Cir. 1992). A petitioner "must present 'both the operative facts and the legal principles that control each claim to the state judiciary.'" <u>Ellsworth v. Levenhagen</u>, 248 F.3d 634, 639 (7th Cir. 2001) (quoting <u>Wilson v. Briley</u>, 243 F.3d 325, 327 (7th Cir. 2001)). A "passing reference to a constitutional issue certainly does not suffice." <u>Chambers v. McCaughtry</u>, 264 F.3d 732, 738 (7th Cir. 2001).

8

In this case, petitioner never raised claim number five, that he was subject to retaliatory and malicious prosecution, at any time during the State court proceedings. Thus, petitioner's claim for retaliatory and malicious prosecution is procedurally defaulted.

If a petitioner's claim is procedurally defaulted, this Court can reach the merits only if petitioner can demonstrate: 1) adequate cause to excuse his failure to raise the claims in state court; and 2) actual prejudice resulting from the default. Farrell v. Lane, 939 F.2d 409, 411 (7th Cir. 1991). The cause prong is satisfied when "some external objective factor, such as interference by officials or unavailability of the factual or legal basis of a claim impedes a petitioner's compliance with the state's procedural rule. Barksdale v. Lane, 957 F.2d 379, 385 (7th Cir. 1992). The prejudice prong is satisfied if petitioner can "show not merely that the errors at . . . trial created the *possibility* of prejudice, but that they worked to *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986).

In this case, petitioner has shown neither of these things. Petitioner has not argued that the constitutional error he alleged has prejudiced him. Similarly, his attempt to show cause must fail. Petitioner gives no reasons as to why this claim was not raised in the State courts.

We conclude that petitioner has not established cause for his default. Petitioner was able to adequately raise all of his claims in his direct appeal. Further, he was able to raise and preserve numerous claims in his petition for leave to appeal to the Illinois Supreme Court. Therefore we find that petitioner has not offered any external considerations that explain why he was able to raise some claims sufficiently, but not others.

Although petitioner has failed to show cause or prejudice for his default, he may still overcome this forfeiture by showing that he fits within the "miscarriage of justice" exception. This

exception is limited to those extraordinary cases in which the petitioner is actually innocent of the crime for which he is imprisoned. See Steward v. Gilmore, 80 F.3d 1205, 1212 (7th Cir. 1996). In this case, there is no evidence of petitioner's innocence. He has admitted that he pulled the trigger which resulted in the murder. Therefore, petitioner is not entitled to the "miscarriage of justice" exception.

For all of these reasons, petitioner's claim number five, retaliatory and malicious prosecution, is procedurally defaulted.

## II. Merits Of The Claims Properly Presented

Petitioner's claims number one, two, three and four were presented to the Illinois Appellate Court and in his petition for leave to appeal to the Illinois Supreme Court. The Appellate Court decided the issues on the merits to the extent that it stated that it reviewed petitioner's allegations and found them meritless. Petitioner has not demonstrated that the Appellate Court's determination "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." U.S.C. 2254(d)(2). Moreover, even if this Court were to determine that the Illinois Appellate Court did not make a merits determination, petitioner has still not established a right to any relief.

### A. Claim One

Petitioner's claim number one is that he was denied due process and equal protection because his brother was coerced into signing a written statement. First, a defendant generally does not have standing to complain about violations of the rights of third parties. United States ex rel. Cunningham

v. DeRobertis, 719 F.2d 892, 895 (7th Cir. 1983). A violation of a non-defendant's rights may constitute a violation of the defendant's right to a fair trial, however, "when the government seeks a conviction through use of evidence obtained by extreme coercion or torture." United States v. Chiavola, 744 F.2d 1271, 1273 (7th Cir. 1988). The ultimate issue is whether the government's investigative methods resulted in a fundamentally unfair trial. Id. at 1273.

In this case, there is no credible evidence that petitioner's brother was coerced into signing a statement, and there is certainly no evidence of extreme coercion or torture. There is no indication that petitioner's trial was unfair because of the introduction of this statement. Thus, petitioner's claim fails.

Petitioner next argues that defense counsel convinced both petitioner and his brother to withdraw any motions to suppress the brother's statement because the statement was actually helpful to petitioner's defense of sudden and intense passion. Petitioner claims that as a result of this withdrawn pre-trial motion, petitioner was denied the opportunity to discover any deals or promises made to his brother.

These allegations do not establish a violation of due process and equal protection rights. The decision whether or not to file a motion regarding any statements is a matter of trial tactics and is not a proper claim for federal habeas review. In fact, petitioner's defense at trial was sudden and intense passion, and his brother Demetrius' testimony was consistent with this defense. Therefore, trial counsel's actions do not amount to a violation of due process or equal protection, nor do they amount to ineffective assistance of counsel.

For all of these reasons, we deny petitioner's claim number one.

B. Claim Two

The first part of petitioner's claim two is that prosecutorial misconduct occurred when the prosecutors interviewed his witness, Deborah Turner, before trial and then impeached her with the information they learned during the interview. Petitioner's allegations do not amount to a proper habeas claim.

First, it is perfectly proper for the prosecutors to interview Ms. Turner prior to trial. Moreover, petitioner does not state what this impeachment was and, in fact, the summary of Deborah Turner's testimony demonstrates that her testimony did not hurt, but in fact helped, petitioner. Thus, no prosecutorial misconduct has been established.

Petitioner next claims that the prosecution did not disclose to him that his main witness, Deborah Turner, was the confidential informant in this case, who gave the police the information on petitioner's location, leading to his arrest. First, there is no indication that Turner was in fact the confidential informant leading to the arrest. Moreover, this is not <u>Brady</u> material because it was not exculpatory–that is, the information was not helpful to the defense.

Moreover, the Supreme Court has stated that a new trial is not automatically required when "a combing of the prosecutor's files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. . . .A finding of materiality is required under <u>Brady</u>." <u>Giglio v. United States</u>, 405 U.S. 105, 154 (1972). If, in fact, Turner was the confidential informant, and the prosecution withheld this information, the outcome of the trial would not have been different. Turner was petitioner's witness, and her testimony was helpful to petitioner's defense of sudden and intense passion. <u>See</u> <u>People v. Yarbrough</u>, 645 N.E.2d 423 (Ill.App.Ct. 1994).

Petitioner has stated no reason why, if he had impeached his own helpful witness, the outcome would have been different.

For these reasons, we deny petitioner's claim number two.

C.  Claim Three

Petitioner's claim number three is that the prosecution failed to disclose that another one of petitioner's brothers, Dubois Yarbrough, was identified as the assailant in this case by a key witness, Barbara Petersen.  Petitioner raised this claim in his post-conviction petition, which was denied.  That decision was neither contrary to existing law nor an unreasonable application of the law to the facts.

In any event, even if this identification occurred, and petitioner was entitled to discovery of the identification, a defendant is not entitled to relief under Brady v. Maryland, 373 U.S. 83 (1963) unless he makes a substantial showing of materiality.  Implicit in the requirement of materiality under Brady is the notion that the suppressed evidence would have affected the outcome of the trial. United States v. Agurs, 427 U.S. 97 (1976).  "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.  A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome."  United States v. Bagley, 473 U.S. 667 (1985).

In this case, petitioner testified at trial that he shot the victim.  That an identification witness first identified his brother as the assailant  is irrelevant to the outcome of the trial.

For these reasons, we deny petitioner's claim number three.

D. Claim Four

In claim four, petitioner makes the bare allegation that he was denied the effective assistance of counsel because petitioner did not have the opportunity to confront the witnesses in the courtroom "or who had some knowledge of the case." He claims that an attorney has both the right and a responsibility to his client to interview the witnesses. Petitioner raised this claim in his post-conviction petition and in his brief before the Illinois Appellate Court. However, petitioner did not there, nor does he here, state which witnesses were not interviewed, and which witnesses he did not have the opportunity to confront. He has not given any specific information, whatsoever, to support his claim. Therefore, petitioner's claim number four is without merit and is denied.

## CONCLUSION

For the foregoing reasons, we deny the § 2254 petition for writ of habeas corpus brought by petitioner DeMarco Yarbrough. This is a final and appealable order and all other pending motions are deemed moot by this Order. This case is terminated.

Wayne R. Andersen
United States District Judge

Dated: January 16, 2002

14

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5500 | **DATE** | 1/16/2002 |
| **CASE TITLE** | U.S.A. ex rel Yarbrough vs. Richard B. Gramley | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Enter MEMORANDUM, OPINION AND ORDER: For the foregoing reasons, we deny the Section 2254 petition for writ of habeas corpus brought by petitioner DeMarco Yarbrough. This is a final and appealable order and all other pending motions are deemed moot by this Order. This case is terminated.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | | Document Number |
|---|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | | | |
| | No notices required. | | | number of notices | | |
| | Notices mailed by judge's staff. | | | | | |
| | Notified counsel by telephone. | | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | | |
| TSA | courtroom deputy's initials | | | date mailed notice | | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | | |

# United States District Court
## Northern District of Illinois
### Eastern Division

U.S.A. ex rel Yarbrough

v.

Richard B. Gramley

**JUDGMENT IN A CIVIL CASE**

Case Number: 98 C 5500

☐   Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■   Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that for the foregoing reasons, we deny the Section 2254 petition for writ of habeas corpus brought by petitioner DeMarco Yarbrough. This is a final and appealable order and all other pending motions are deemed moot by this order. This case is termianted.

Michael W. Dobbins, Clerk of Court

Date: 1/16/2002

Tresa S. Abraham, Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA, ex rel )
DeMARCO YARBROUGH, )
                                    )
              Petitioner, )
                                    )      No. 98 C 5500
      v. )
                                      )      Judge Wayne R. Andersen
RICHARD B. GRAMLEY, )
                                    )
             Respondent. )

## MEMORANDUM, OPINION AND ORDER

      This case is before the Court on the petition of DeMarco Yarbrough for writ of habeas corpus pursuant to U.S.C. § 2254. For the following reasons, we deny the petition for habeas corpus.

### BACKGROUND

      Petitioner does not challenge the statement of facts set forth in the order of the Illinois Appellate Court affirming his first degree murder and home invasion convictions. See People v. Yarbrough, 645 N.E.2d 423 (Ill.App.Ct. Dec. 20, 1994). For purposes of federal habeas review, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e). Accordingly, we will adopt the facts as our own.

      In August 1989, petitioner resided in a Richton Park apartment with Debra Turner, Richard Clerk, and Irma Jean McCastle. Petitioner and Turner had been living together for six months. On Friday, August 18, 1989, petitioner, his roommates, and several of Turner's relatives were present at a dinner party at the Richton Park apartment. At some point during the night, Turner's relatives

and Richard Clerk left the apartment and James Clerk, Richard's nephew, joined the party. The guests consumed alcohol, heroin, cocaine, and marijuana.

When the party ended early Saturday morning, petitioner and Turner went to sleep in the bedroom they shared. McCastle went to sleep in her room and James Clerk went to sleep on the couch in the living room. Petitioner awoke Saturday afternoon and left the apartment to pick up his paycheck. He was away from the apartment for approximately forty-five minutes to one hour. Turner testified that as she was sleeping on the bed, while lying on her stomach and dressed in a nightshirt with no underwear, she was partially awakened by someone touching her in a sexual manner. Half asleep, hung over from the night before and still in a drugged state, she thought petitioner was fondling her. She testified that when her legs were pulled apart, she awoke and found that the man was James Clerk, not petitioner. Turner screamed at Clerk, asking him what he was doing. Clerk responded that petitioner was not present and since he and Turner had known each other for a long time, he thought they could have intercourse. Turner shouted that he had better leave, and Clerk left the bedroom.

When petitioner returned to the apartment, he drove James Clerk to a liquor store in Ford Heights and continued on to visit some relatives in Chicago. James Clerk's girlfriend, Sheila Harris, testified that Clerk seemed upset and jumpy that evening, continually looking out the windows.

Petitioner testified that he left Chicago around midnight on that Saturday night, returned to the Richton Park apartment and went to sleep, without speaking to Turner. On Sunday afternoon, petitioner noticed Turner's distressed state and asked what was upsetting her. Petitioner testified that Turner, while crying hysterically, told him that Clerk had raped her. Turner testified that she was

unsure whether she used the word "rape" or "attack" or "molest," but stated that it was a word in that category.

Petitioner testified that he felt his stomach drop and started crying. He immediately drove to the 100 block of West Hickory Street in Chicago Heights, where both his brother, Dwayne Yarbrough, and James Clerk resided in separate apartments. Petitioner recklessly pulled his car into Dwayne Yarbrough's driveway at 130 Hickory Street. Petitioner exited from the car and yelled "that nigger raped Debra."

Petitioner testified that he wanted to find out if it was true that Clerk had raped his girlfriend. Following petitioner's request, Dwayne took him to Clerk's apartment, down the block at 120 West Hickory Street. Petitioner knocked on Clerk's second floor apartment door, and Clerk eventually answered the door. He allowed petitioner into the apartment. Sheila Harris was also in the apartment at the time. Petitioner did not want to speak in front of her, so he said,"I need to speak to you about something that's important." Clerk appeared shocked and agreed to meet petitioner downstairs outside of the apartment.

Petitioner testified that he exited the apartment, waited for Clerk for a minute or two, and then went back to Dwayne's apartment. While in Dwayne's apartment, petitioner retrieved a large automatic rifle, measuring approximately three to four feet in length. Petitioner testified that he did not trust Clerk and viewed him as a threat, so he grabbed the rifle for protection. Petitioner testified that he was emotional, confused, and hurt. He tried to place the rifle in his pants, but it did not fit.

Petitioner testified that he exited Dwayne's apartment and headed back to Clerk's residence. Clerk was not in front of the apartment when petitioner arrived. Petitioner knocked on Clerk's door and when Clerk answered, he smiled at petitioner. Petitioner testified that, at that moment, he

3

thought Clerk had raped Debra Turner. Clerk attempted to run, and petitioner fired the gun several times in Clerk's direction. Petitioner claims that he pulled the automatic trigger only one time.

Sheila Harris testified that she opened the bedroom door when she heard a pop sound and observed Clerk lying on the ground, with both his hands up "yelling for his life." James Rossi, an evidence technician for the Cook County Sheriff's office, testified that a bullet recovered from the floor at the scene indicated that petitioner fired that particular shot while standing over the deceased. Clerk had been shot five times.

Petitioner then ran back down the street and through the gangway alongside Dwayne's apartment building, dropped the weapon and continued into the forest preserve. Approximately one week later, petitioner and Debra Turner fled to Minneapolis, where petitioner was arrested over one year later, on September 19, 1990. The following day, petitioner gave a signed statement to police accounting the events surrounding James Clerk's death.

At trial, contending that he killed James Clerk under a state of sudden and intense passion after he learned that Clerk had sexually assaulted his girlfriend, petitioner sought a jury instruction for second degree murder based upon sudden and intense passion. The trial court denied petitioner's request. Petitioner was convicted of first degree murder and home invasion, and he was sentenced to concurrent imprisonment terms of 40 years for murder and 30 years for home invasion.

Petitioner appealed his convictions to the Illinois Appellate Court, First Judicial District contending that: 1) the trial court erred in refusing his tendered second degree murder instruction based on sudden and intense passion; 2) he was entitled to have his conviction for home invasion reversed because it was based on the same physical act as the murder; and 3) since he received multiple convictions for the same physical act, he was entitled to re-sentencing. On December 20,

4

1994, the Illinois Appellate Court affirmed the convictions. <u>People v. Yarbrough</u>, 645 N.E.2d 423 (Ill.App.Ct. 1994).

Petitioner filed a petition for leave to appeal to the Illinois Supreme Court contending that: 1) his sentence violated the cruel and unusual punishment provision of the 8th Amendment and violated his right to due process of the law; 2) he was not proven guilty of home invasion beyond a reasonable doubt because he did not enter with the intent to commit a felony; and 3) the court erred in not allowing an instruction on the lesser offense of second degree murder based on sudden and intense passion. On October 4, 1995, the Illinois Supreme Court denied the petition for leave to appeal. <u>People v. Yarbrough</u>, No. 79191.

Petitioner filed a post-conviction petition, which was dismissed by the trial judge. Petitioner appealed to the Illinois Appellate Court , and appointed counsel filed a motion to withdraw based on <u>Pennsylvania v. Finley</u>, because counsel believed there to be no arguable bases for collateral relief. Petitioner filed a motion to deny counsel's motion to withdraw alleging that: 1) denial of equal protection and due process rights because his brother was coerced into signing a written statement in this case; 2) a <u>Brady</u> violation because it was not disclosed that another man was interrogated in this case who fit a witness' identification of the assailant; 3) prosecutorial misconduct because the prosecutors failed to disclose that it was petitioner's brother who was identified at the scene and because the state's attorney talked to the defense witness before trial; 4) ineffective assistance of counsel because his lawyers did not object when prosecutors talked with the petitioner's key witness in this case and did not disclose the substance of that conversation to petitioner; 5) ineffective assistance of counsel when he was not given the opportunity to examine and impeach witnesses regarding undisclosed evidence and because counsel misapprehended the law regarding

5

second degree murder. On October 21, 1997, the Illinois Appellate Court determined there to be no issues of arguable merit. The Appellate Court thus granted the motion of the public defender to withdraw as counsel and affirmed the judgment of the Circuit Court. People v. Yarbrough, 1-97-0294.

On November 26, 1997, petitioner filed a petition for leave to appeal the denial of his post-conviction petition to the Illinois Supreme Court, raising the same issues he raised in the Appellate Court. On February 4, 1998, the Illinois Supreme Court denied the petition for leave to appeal.

On September 1, 1998, petitioner filed the instant petition for writ of habeas corpus in this Court alleging: 1) he was denied due process and equal protection of the law because his brother, not a defendant in this case, was coerced to sign a statement linking petitioner to the crime, and petitioner was denied the opportunity to discover any information regarding any deals or promises made to his brother; 2) prosecutorial misconduct because prosecutors talked to Ms. Turner, the petitioner's key witness, the night before trial and prevented him from discovering that Ms. Turner was a hostile witness; 3) a Brady violation by the failure of the prosecutor to disclose that another one of petitioner's brothers was identified as the assailant in this case by a key witness; 4) ineffective assistance of counsel due to the fact that counsel was not given the opportunity to impeach all witnesses; and 5) petitioner was subject to malicious and retaliatory prosecution.

On June 27, 2000, we denied petitioner's request for appointment of counsel. We gave petitioner until October 5, 2000 to file a reply brief. That date was later extended at petitioner's request to December 22, 2000. To date, over one year later, the Court has received no reply filed by petitioner.

6

## DISCUSSION

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Moffat v. Gilmore, 113 F.3d 698, 702 (7th Cir. 1997); see also Del Vecchio v. Illinois Dept. of Corrections, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law."). The federal courts may not grant habeas relief under Section 2254 unless the state court's judgment "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

Before a federal court may review the merits of a habeas petition, a petitioner must: (1) exhaust all remedies available in state courts; and (2) fairly present any federal claims in state court first, or risk procedural default. See Chambers v. McCaughtry, 264 F.3d 732, 737 (7th Cir. 2001) ("Failure to exhaust available state court remedies constitutes a procedural default."); see also Bocian v. Godinez, 101 F.3d 465, 468 (7th Cir. 1996) (same). "The habeas petitioner must present his federal constitutional claims initially to the state courts in order to give the state 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'" McGowan v. Miller, 109 F.3d 1168, 1172 (7th Cir. 1997) (quoting Duncan v. Henry, 513 U.S. 364, 365 (1995)).

A petitioner has exhausted his state court remedies "by either (a) providing the highest court in the state a fair opportunity to consider the constitutional issue, or (b) having no further available means for pursuing a review of one's conviction in state court." Wallace v. Duckworth, 778 F.2d

1215, 1219 (7th Cir. 1985). In this case, exhaustion is not an issue. Respondent concedes that petitioner has exhausted his state court remedies for purposes of federal habeas review because he has no further avenues in state court through which to challenge his conviction. We now turn to the issue of procedural default.

I. Procedural Default

Claims that were never presented to the state courts cannot be raised for the first time in a federal habeas corpus petition. Rodriguez v. Peters, 63 F.3d 546, 555 (7th Cir. 1995); Burgin v. Broglin, 900 F.2d 990, 996-97 (7th Cir. 1990). If the state court is not presented with an issue, that court did not have the opportunity to consider the matter. Thus, the claim is not fairly presented to the state courts, and it is inappropriate for habeas review. Steward v. Gilmore, 80 F.3d 1205, 1212 (7th Cir. 1996). The failure to include an issue in a petition for leave to appeal to the Illinois Supreme Court precludes consideration of the claim in federal court on habeas review. O'Sullivan v. Boerckel, 526 U.S. 838 (1999); Rodriguez v. Scillia, 193 F.3d 913, 917 (7th Cir. 1999).

A petitioner has not fairly presented an issue to a state court if his argument did not "(1) rely on pertinent federal cases employing constitutional analysis; (2) rely on state cases applying constitutional analysis to a similar factual situation; (3) assert the claim in terms so particular as to call to mind a specific constitutional right; or (4) allege a pattern of facts that is well within the mainstream of constitutional litigation." Verdin v. O'Leary, 972 F.2d 1467, 1473-74 (7th Cir. 1992). A petitioner "must present 'both the operative facts and the legal principles that control each claim to the state judiciary.'" Ellsworth v. Levenhagen, 248 F.3d 634, 639 (7th Cir. 2001) (quoting Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001)). A "passing reference to a constitutional issue certainly does not suffice." Chambers v. McCaughtry, 264 F.3d 732, 738 (7th Cir. 2001).

In this case, petitioner never raised claim number five, that he was subject to retaliatory and malicious prosecution, at any time during the State court proceedings. Thus, petitioner's claim for retaliatory and malicious prosecution is procedurally defaulted.

If a petitioner's claim is procedurally defaulted, this Court can reach the merits only if petitioner can demonstrate: 1) adequate cause to excuse his failure to raise the claims in state court; and 2) actual prejudice resulting from the default. Farrell v. Lane, 939 F.2d 409, 411 (7th Cir. 1991). The cause prong is satisfied when "some external objective factor, such as interference by officials or unavailability of the factual or legal basis of a claim impedes a petitioner's compliance with the state's procedural rule. Barksdale v. Lane, 957 F.2d 379, 385 (7th Cir. 1992). The prejudice prong is satisfied if petitioner can "show not merely that the errors at . . . trial created the *possibility* of prejudice, but that they worked to *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." Murray v. Carrier, 477 U.S. 478, 494 (1986).

In this case, petitioner has shown neither of these things. Petitioner has not argued that the constitutional error he alleged has prejudiced him. Similarly, his attempt to show cause must fail. Petitioner gives no reasons as to why this claim was not raised in the State courts.

We conclude that petitioner has not established cause for his default. Petitioner was able to adequately raise all of his claims in his direct appeal. Further, he was able to raise and preserve numerous claims in his petition for leave to appeal to the Illinois Supreme Court. Therefore we find that petitioner has not offered any external considerations that explain why he was able to raise some claims sufficiently, but not others.

Although petitioner has failed to show cause or prejudice for his default, he may still overcome this forfeiture by showing that he fits within the "miscarriage of justice" exception. This

exception is limited to those extraordinary cases in which the petitioner is actually innocent of the crime for which he is imprisoned. See Steward v. Gilmore, 80 F.3d 1205, 1212 (7th Cir. 1996). In this case, there is no evidence of petitioner's innocence. He has admitted that he pulled the trigger which resulted in the murder. Therefore, petitioner is not entitled to the "miscarriage of justice" exception.

For all of these reasons, petitioner's claim number five, retaliatory and malicious prosecution, is procedurally defaulted.

II. Merits Of The Claims Properly Presented

Petitioner's claims number one, two, three and four were presented to the Illinois Appellate Court and in his petition for leave to appeal to the Illinois Supreme Court. The Appellate Court decided the issues on the merits to the extent that it stated that it reviewed petitioner's allegations and found them meritless. Petitioner has not demonstrated that the Appellate Court's determination "was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." U.S.C. 2254(d)(2). Moreover, even if this Court were to determine that the Illinois Appellate Court did not make a merits determination, petitioner has still not established a right to any relief.

A. Claim One

Petitioner's claim number one is that he was denied due process and equal protection because his brother was coerced into signing a written statement. First, a defendant generally does not have standing to complain about violations of the rights of third parties. United States ex rel. Cunningham

v. DeRobertis, 719 F.2d 892, 895 (7th Cir. 1983). A violation of a non-defendant's rights may constitute a violation of the defendant's right to a fair trial, however, "when the government seeks a conviction through use of evidence obtained by extreme coercion or torture." United States v. Chiavola, 744 F.2d 1271, 1273 (7th Cir. 1988). The ultimate issue is whether the government's investigative methods resulted in a fundamentally unfair trial. Id. at 1273.

In this case, there is no credible evidence that petitioner's brother was coerced into signing a statement, and there is certainly no evidence of extreme coercion or torture. There is no indication that petitioner's trial was unfair because of the introduction of this statement. Thus, petitioner's claim fails.

Petitioner next argues that defense counsel convinced both petitioner and his brother to withdraw any motions to suppress the brother's statement because the statement was actually helpful to petitioner's defense of sudden and intense passion. Petitioner claims that as a result of this withdrawn pre-trial motion, petitioner was denied the opportunity to discover any deals or promises made to his brother.

These allegations do not establish a violation of due process and equal protection rights. The decision whether or not to file a motion regarding any statements is a matter of trial tactics and is not a proper claim for federal habeas review. In fact, petitioner's defense at trial was sudden and intense passion, and his brother Demetrius' testimony was consistent with this defense. Therefore, trial counsel's actions do not amount to a violation of due process or equal protection, nor do they amount to ineffective assistance of counsel.

For all of these reasons, we deny petitioner's claim number one.

B. Claim Two

The first part of petitioner's claim two is that prosecutorial misconduct occurred when the prosecutors interviewed his witness, Deborah Turner, before trial and then impeached her with the information they learned during the interview. Petitioner's allegations do not amount to a proper habeas claim.

First, it is perfectly proper for the prosecutors to interview Ms. Turner prior to trial. Moreover, petitioner does not state what this impeachment was and, in fact, the summary of Deborah Turner's testimony demonstrates that her testimony did not hurt, but in fact helped, petitioner. Thus, no prosecutorial misconduct has been established.

Petitioner next claims that the prosecution did not disclose to him that his main witness, Deborah Turner, was the confidential informant in this case, who gave the police the information on petitioner's location, leading to his arrest. First, there is no indication that Turner was in fact the confidential informant leading to the arrest. Moreover, this is not <u>Brady</u> material because it was not exculpatory—that is, the information was not helpful to the defense.

Moreover, the Supreme Court has stated that a new trial is not automatically required when "a combing of the prosecutor's files after the trial has disclosed evidence possibly useful to the defense but not likely to have changed the verdict. . . .A finding of materiality is required under <u>Brady</u>." <u>Giglio v. United States</u>, 405 U.S. 105, 154 (1972). If, in fact, Turner was the confidential informant, and the prosecution withheld this information, the outcome of the trial would not have been different. Turner was petitioner's witness, and her testimony was helpful to petitioner's defense of sudden and intense passion. <u>See</u> <u>People v. Yarbrough</u>, 645 N.E.2d 423 (Ill.App.Ct. 1994).

Petitioner has stated no reason why, if he had impeached his own helpful witness, the outcome would have been different.

For these reasons, we deny petitioner's claim number two.

C. Claim Three

Petitioner's claim number three is that the prosecution failed to disclose that another one of petitioner's brothers, Dubois Yarbrough, was identified as the assailant in this case by a key witness, Barbara Petersen. Petitioner raised this claim in his post-conviction petition, which was denied. That decision was neither contrary to existing law nor an unreasonable application of the law to the facts.

In any event, even if this identification occurred, and petitioner was entitled to discovery of the identification, a defendant is not entitled to relief under Brady v. Maryland, 373 U.S. 83 (1963) unless he makes a substantial showing of materiality. Implicit in the requirement of materiality under Brady is the notion that the suppressed evidence would have affected the outcome of the trial. United States v. Agurs, 427 U.S. 97 (1976). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." United States v. Bagley, 473 U.S. 667 (1985).

In this case, petitioner testified at trial that he shot the victim. That an identification witness first identified his brother as the assailant is irrelevant to the outcome of the trial.

For these reasons, we deny petitioner's claim number three.

13

D. Claim Four

In claim four, petitioner makes the bare allegation that he was denied the effective assistance of counsel because petitioner did not have the opportunity to confront the witnesses in the courtroom "or who had some knowledge of the case." He claims that an attorney has both the right and a responsibility to his client to interview the witnesses. Petitioner raised this claim in his post-conviction petition and in his brief before the Illinois Appellate Court. However, petitioner did not there, nor does he here, state which witnesses were not interviewed, and which witnesses he did not have the opportunity to confront. He has not given any specific information, whatsoever, to support his claim. Therefore, petitioner's claim number four is without merit and is denied.

## CONCLUSION

For the foregoing reasons, we deny the § 2254 petition for writ of habeas corpus brought by petitioner DeMarco Yarbrough. This is a final and appealable order and all other pending motions are deemed moot by this Order. This case is terminated.

Wayne R. Andersen
United States District Judge

Dated: January 16, 2002